FILED by _____ D.C.
MAR 22 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 02-60493-CIV-MARTINEZ

RON SEARS, Individually and on behalf
of all others similarly situated,

    Plaintiff,

vs.

ROADHOUSE GRILL, INC., VINCENT
TAN, and AYMAN SABI,

    Defendants.
_____/

**CLOSED CIVIL CASE**

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss the Second Amended Complaint **(D.E. No. 56)**. The Court has carefully considered the motion, heard argument, and is otherwise duly advised. For the reasons set forth below, the Second Amended Complaint [hereinafter "complaint"] is dismissed with prejudice.

### I. BACKGROUND ALLEGATIONS

Roadhouse Grill, Inc. ("Roadhouse Grill") is a Delaware corporation with its principal executive offices located in Pompano Beach, Florida (Compl. ¶ 15). Roadhouse Grill is a publicly-held company, and its stock is traded on the NASDAQ under the symbol "GRLL." *Id.* ¶¶ 21, 31. Roadhouse Grill operates a chain of restaurants. *Id.* ¶ 15. Defendant, Vincent Tan ("Tan"), is the Chairman of the Board ("Chairman"). *Id.* ¶ 16. Defendant, Ayman Sabi ("Sabi"), is the President, Chief Executive Officer ("CEO"), and a Director of the Roadhouse Grill Board. *Id.* ¶ 17. The complaint alleges securities fraud violations against Tan and Sabi. Roadhouse

Grill was not named as a Defendant in the Second Amended Complaint.

Tan, as Chairman, signed Roadhouse Grill's Annual Report on Form 10-K for the fiscal year ending April 25, 1999, which was filed with the Securities and Exchange Commission ("SEC"). (Compl. ¶ 16). Tan also signed an annual report on Form 10-K for the fiscal year ending April 30, 2000, which was filed with the SEC. *Id.* Tan allegedly never attended a Board meeting, either in person or telephonically. *Id.* ¶146.

Sabi, as CEO, signed the annual reports during the class period on Forms 10-K, as well as the quarterly reports on the Form 10-Q, which were filed with the SEC. (Compl. ¶ 17). Sabi signed the July 31, 2000 annual report, and the amended annual report as "Acting Chief Financial Officer (Principal Financial Officer and Principal Accounting Officer)," as well as President, CEO, and Director. *Id.* ¶ 17.

Harry Rosenfeld ("Rosenfeld") began work as a consultant for Roadhouse Grill in August 2000. (Compl. ¶ 38).[1] Rosenfeld was named Roadhouse Grill's Chief Financial Officer ("CFO") CFO in September 2000. *Id.* ¶ 39. Before Rosenfeld began working for Roadhouse Grill, the previous CFO left two or three months earlier. *Id.* ¶ 40. Sabi, although not a Certified Public Accountant, had performed the duties as Acting CFO. *Id.*

After Rosenfeld began work in August 2000, he spent five months reconciling the general

---

[1] As is discussed below, in connection with the bankruptcy proceedings, Rosenfeld testified at a deposition. (Compl. ¶ 37). The Rosenfeld deposition is quoted extensively throughout the complaint. (*See id., passim*). Accordingly, this Court can review the entirety of the deposition without converting this motion to dismiss into one for summary judgment. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiffs' claim, then the Court may consider the documents as part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion will not require the conversion of the motion into a motion for summary judgment.").

ledger, which allegedly had not been reconciled in a "couple of years." *Id.* ¶¶ 43-44. Rosenfeld found accounting errors, such as corporate deposits that were overstated; improperly deferred rent; the bank account was not reconciled properly; the self-funded medical insurance was not reconciled properly; and rebates were improperly recognized as revenue. *Id.* ¶¶ 46-51. Rosenfeld testified he informed Sabi about "the unreconciled general ledger problem" in September 2000 and that Rosenfeld "kept [Sabi] apprised and the Board of Directors." *Id.* ¶ 52. In January 2001, after Rosenfeld reconciled almost all the accounts, Rosenfeld recommended Roadhouse Grill restate its earnings at the end of the third quarter for fiscal year 2001. *Id.* ¶ 53.

In a press release issued on the Business Wire on August 1, 2000, Roadhouse Grill announced it was preparing to restate its earnings for prior periods. (Compl. ¶34). NASDAQ halted trading of Roadhouse Grill's common stock until trading resumed on September 10, 2001. *Id.* The complaint alleges Roadhouse Grill's common stock, "which had traded as high as $6.875 on July 6, 1999, plummeted $0.59 per share [from $1.19 per share] to $0.60 -- a drop of nearly 50 percent -- when trading resumed on September 10, 2001." *Id.* at ¶ 7.

On August 14, 2001, Roadhouse Grill restated financial statements with the SEC for fiscal years 1999 and 2000, and the corresponding quarters, as well as for the first three quarters for fiscal year 2001. *Id.* ¶ 34. Net income was reduced from $3,512,000 to $2,606,000 (decreased $906,000) for fiscal year 2000 and from $6,008,000 to $5,708,000 (decreased $300,000) for fiscal year 1999. *Id.* The impact in 2001 was an increase of $1.2 million. (Rosenfeld Dep. at 40).

After the restatements, Roadhouse Grill's auditors, KPMG, issued a going concern warning. (Compl. ¶ 36). In early 2002, Roadhouse Grill was forced into involuntary bankruptcy.

This case was filed on April 2, 2002. On May 6, 2002, Roadhouse Grill filed a Suggestion of Bankruptcy. On May 20, 2002, the Court stayed the case as to Defendant, Roadhouse Grill. The Court appointed Lead Plaintiffs on June 9, 2002. Plaintiffs filed their Amended Complaint on June 22, 2002. The Court, after hearing argument on the motion to dismiss the Amended Complaint, dismissed the First Amended Complaint and granted Plaintiffs leave to amend. Plaintiffs filed their Second Amended Complaint within the time period set by the Court's Order. The Second Amended Complaint, which is at issue here, does not name Roadhouse Grill as a Defendant.[2]

## II. LEGAL STANDARD

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994) (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)). Determining the propriety of granting a motion to dismiss requires a court to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *Hummings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Systems., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted); *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1983). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of

---

[2] While Plaintiffs have not named Roadhouse Grill as a Defendant in the Second Amended Complaint, Plaintiffs have not officially dismissed their claims against Roadhouse Grill, as this cause was stayed as to Roadhouse Grill when Plaintiffs filed their Second Amended Complaint.

his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted. *M/V Sea Lion V v. Reyes*, 23 F.3d 345, 347 (11th Cir. 1994) (citations omitted). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. *Blumel v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Plaintiffs allege Tan and Sabi violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) ("Section 10(b)"), and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). Section 10(b) makes it unlawful for any person "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). "Rule 10b-5 prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements made misleading in connection with the purchase or sale of any security." *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1321 (S.D. Fla. 2004) (citing 17 C.F.R. §240.10b-5). A plaintiff must show the following elements to state a securities fraud claim under Rule 10b-5: 1) a misstatement or omission; 2) of a material fact; 3) made with scienter; 4) on which the plaintiff justifiably relied; and 5) that proximately caused the plaintiff's injury. *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1281 (11th Cir. 1999).

To survive a motion to dismiss, Plaintiffs' claim of fraud under Rule 10b-5 must satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b) and the Private Securities Litigation

Reform Act ("PSLRA" or "Reform Act"). Rule 9(b) requires the "circumstances constituting fraud ... be stated with particularity." The PSLRA, 15 U.S.C. § 78u-4(b), has two requirements: 1) the plaintiff must specify each statement alleged to have been misleading and the specific reason or reasons why the statement is misleading, 15 U.S.C. § 78u-4(b)(1); and 2) the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). If a plaintiff does not satisfy both requirements, the court must dismiss the action. 15 U.S.C. § 78u-4(b).

The requisite scienter under Section 10(b) and Rule 10b-5 is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976). The Supreme Court precluded civil liability for negligence but did not reach the issue of whether reckless conduct would suffice. *Id.* The Eleventh Circuit has since held severe recklessness may also satisfy the scienter requirement to impose civil liability under Section 10(b) and Rule 10b-5. *Bryant*, 187 F.3d at 1282. The Eleventh Circuit in *Bryant* stated its earlier-announced definition of "severe recklessness" applies. *Id.*

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* at n.18 (quoting *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989)). Therefore, the complaint must allege with particularity facts giving rise to a strong inference that both Tan and Sabi acted either with actual knowledge or were severely reckless.

### III. ANALYSIS

Here, Plaintiffs argue: "During the Class Period, the Company issued unreliable financial

statements that failed to comply with Generally Accepted Accounting Principles ("GAAP"), as the subsequent restatement demonstrated." (Pls.' Mem. Opp. ("Response") at 2). Plaintiffs' conclusion is reflected within the allegations of the complaint, which have been summarized in the background section herein. Plaintiffs' argue their allegations give rise to a strong inference of the requisite scienter. The remainder of the allegations relate to inaccuracies in the accounting, which were not in accordance with GAAP, and access to information.[3]

A careful reading of Rosenfeld's deposition testimony negates Plaintiff's assertions that the complaint alleges particularized facts that give rise to a strong inference of scienter. With regard to allegations of actual knowledge, Plaintiffs allege Rosenfeld told Sabi about the condition of the books. (Compl. ¶52). Rosenfeld testified he told Sabi about problems Rosenfeld found with the books after he took the job in August 2000. *Id.* Accordingly, there are no particularized allegations with regard to actual knowledge of Sabi prior to August 2000.

With respect to the events after August 2000, Rosenfeld's testimony does not give the entire "who, what, when, where and how" of fraud. *DiLeo*, 901 F.2d at 627. Rosenfeld testified when he began work at Roadhouse Grill, he found problems with the accounts:

> Q: [by counsel]: Did you bring these discrepancies and these problems to the attention of Mr. Sabi?
> A: [by Rosenfeld]: Yes, I did.
> Q: Specifically which one did you discuss, or did you discuss all of them?
> A: We discussed all of them, and he told me when I took the job once I started find[ing] these things <u>to clean up the accounting</u>.

---

[3] The complaint fails to allege other facts that would raise an indicia of fraud. There are no allegations of the following: 1) no suspicious or unusual trading of stock; 2) no particularized allegations of profits by virtue of dealing through related companies or exercising stock options; and 3) no allegations establishing scienter by virtue of "red flags" such as management shakeup or indictment or government investigation that were known to and/or severely disregarded by the defendants' auditors. *See, e.g., Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1325 n.23-28 (S.D. Fla. 2004) (listing, *inter alia*, these factors for indicia of fraud and citing cases).

> Q: He asked you to do this, that was at the first meeting?
> A: Once during the two weeks when I found the utility accrual, all the other issues, once I told him all the book[s] and records weren't reconciled[,] he told me to make sure every general ledger is reconciled as soon as you can.
> Q: Did you embark on doing that?
> A: That's correct.
> Q: Did you keep him apprised of what you were doing?
> A: I kept him apprised and the Board of Directors.
> Q: Were you getting their cooperation?
> A: Yes.

(Rosenfeld Dep. at 27-28) (emphasis added). Rosenfeld's testimony does not lead to a strong inference of fraud. Poor business judgment is all that is indicated, particularly since Rosenfeld testified Sabi told him to "clean up the books." There are no facts alleging Sabi attempted to conceal the improper accounting; rather, as is quoted above, Rosenfeld testified Sabi wanted Rosenfeld to correct the errors. Rosenfeld's testimony does not give rise to a strong inference Sabi possessed the requisite fraudulent intent.

Plaintiffs also allege Sabi issued several misleading statements in press releases. (Resp. at 28-29). Plaintiffs allege the statements were materially false and misleading, based upon the incorrect financial data contained within the SEC reports. As Plaintiffs have failed to allege the requisite scienter at the time the SEC reports were filed, Plaintiffs have also failed to allege the requisite scienter for the subsequent press releases, which are based upon the same financial data.

Since the Court has found the complaint fails to allege particularized facts giving rise to a strong inference of actual knowledge, the question remains whether Tan and Sabi's alleged conduct gives rise to a strong inference of severe recklessness. As quoted above, only highly unreasonable omissions or misrepresentations that were an extreme departure from the standards of ordinary care that present a danger of misleading buyers or sellers, and which are either known to the defendant or are so obvious that the defendant must have been aware of them, constitute

severe recklessness. *MacDonald*, 863 F.2d at 814. Rosenfeld's testimony reveals the danger was not so obvious that defendants must have been aware of it:

> A: [by Rosenfeld]: . . . I recommended to the Board of Directors [and the] audit company committee--that the company restate earnings at the end of the third quarter of fiscal [year] 2001.
> Q: [by counsel]: What specifically was the basis for that?
> A: Based on the fact that I believe--based on SAB 99, which is the criteria for restatement, based on SEC rules, that this was material in nature and the books and records of the company definitely needed to be restated.
> Q: Who did you make that recommendation to?
> A: **Audit committee, KPMG[,] Peat Marwick.**
> Q: Did they accept your suggestion?
> A: No.
> Q: Okay. Who first did not accept the suggestion?
> A: KPMG.
> Q: Why?
> A: KPMG did not want the company to restate, they told me that <u>it was not necessary although you could potentially say that</u>--
> Q: Restatement was not necessary?
> A: Was not necessary because, and I firmly disagreed with it, I'm on record as disagreeing with it, but, you know, <u>you have KPMG saying one thing, the CFO saying another</u>, and it's on record, I almost resigned over this, but they thought KPMG would have done enough of these, **they specifically told the Board we did not need to restate and the audit committee, once that make that decision[,] the audit committee decides not to restate.**
> 	At the time it was also discussed that there was, in fact, another three hundred thousand dollars worth of errors that I had found that I could not substantiate, wanted to write off. **Peat Marwick refused** to let me at the time, <u>they had said, let's wait, let's wait until the fourth quarter until you are totally sure</u>, although I was.
> 	The day before we were getting ready to issue the 10K for 2001, I think July 30th, KPMG called me at 3:15 and tells me you need to restate after all, we've changed our mind[,] never giving us a reason why, they're just saying we now believe it is material, and you will restate your earnings.
> . . . .
> Q: Who was on the audit committee?
> A: Phil Friedman and Phil Ratner.
> . . . .
> Q: Were they advised of KPMG's recommendation to restate earnings?
> A: Yes, immediately.
> Q: And what was the conclusion at that point?
> A: They were livid. They were livid because the fact that their CFO wanted to restate, <u>they convinced the Board not to restate</u>.

> Q: <u>Because they relied on KPMG?</u>
> A: <u>That is correct</u>.

(Rosenfeld Dep. at 28-33) (emphasis added).

According to Rosenfeld's above-quoted testimony, KPMG, the auditors, recommended Roadhouse Grill not restate. *Id.* Rosenfeld testified the audit committee relied upon that recommendation, and thus, convinced the Board not to restate. These facts do not give rise to the strong inference that the inaccuracies were so <u>obvious</u>, yet disregarded by Sabi, therefore, amounting to severe recklessness. Nor do the allegations rise to the level of an extreme departure from the standards of ordinary care. As Plaintiffs have not adequately alleged Sabi was severely reckless, while he participated in the day-to-day operations of Roadhouse Grill, Plaintiffs' allegations Tan was completely invisible are likewise insufficient. Even if Tan had participated in the day-to-day operations, under the facts alleged here, he would be in the same situation as Sabi. Accordingly, Plaintiffs have not met the heightened pleading requirements of the PSLRA.

The allegations of the Second Amended Complaint amount to claims of "fraud by hindsight." The doctrine of "fraud by hindsight" was deftly described by the Seventh Circuit Court of Appeals:

> The story in this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. "Must be" is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud. *Goldberg v. Household Bank, f.s.b.*, 890 F.2d 965 (7th Cir. 1989); *First Interstate Bank v. Chapman & Cutler*, 837 F.2d 775, 780 (7th Cir. 1988); *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) (Friendly, J.). That ingredient is missing in the DiLeos' complaint. It presents nothing other than the change in the stated condition of the firm to suggest that E & W was so much as negligent in auditing Continental's financial statements. Rule 9(b) required the district court to dismiss the complaint, which discloses none of the

> circumstances that might separate fraud from the benefit of hindsight. There is no "fraud by hindsight", [sic] in Judge Friendly's felicitous phrase, *Denny*, 576 F.2d at 470, and hindsight is all the DiLeos offer.

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627-628 (7th Cir. 1990). This Court has recognized fraud by hindsight is insufficient, when the hindsight is governed by a restatement: "Stripped to its essentials, Plaintiffs' argument is that Med/Waste disclosed through its restatements what it should have discovered and disclosed in the original quarterly reports. This allegation, however, does not support an inference of scienter; rather, it is classic 'fraud by hindsight.'" *In re Med/Waste, Inc., Sec. Litig.*, 2000 U.S. Dist. LEXIS 22505, *29-30 (S.D. Fla. Aug. 30, 2000).

Moreover, the allegations of the complaint fail to comply with the Eleventh Circuit's requirements under Fed.R.Civ.P. 9(b). The Eleventh Circuit requires a plaintiff to allege: 1) what statements or omissions were made; 2) in what documents or oral presentations; 3) who made the statements; 4) the time and place of the statements; 5) the manner in which they misled the plaintiff; and 6) what benefit the defendant gained as a consequence of the fraud. *Brooks*, 116 F.3d 1364, 1371 (11th Cir. 1997). While the complaint, appears to meet the first five requirements, the complaint does not allege any facts regarding what benefit Tan and Sabi gained from the alleged fraud.

This case is identical to *Answerthink*, in that: "At best, some of Plaintiffs['] allegations may rise to the level of poor business judgment or even mismanagement, but do not [rise] to the level of fraud. Without [a] doubt, Plaintiffs have endeavored to alleged [sic] sufficient facts to withstand a motion to dismiss. . . . The mere magnitude of a Complaint alone, however, does not assure that the heightened pleading requirements under the Reform Act have been met." *Answerthink*, 299 F. Supp. 2d at 1324-25. While the complaint may be sufficient to allege

negligence on the part of Tan and Sabi, allegations of negligence do not suffice to meet the PSLRA's heightened pleading standards for fraud.

While not argued by the parties, Plaintiffs have not sufficiently alleged Defendants' disclosures proximately caused Plaintiffs' injury. In order to show proximate cause, Plaintiffs must show the fraud was in "some reasonably direct, or proximate way responsible for [Plaintiffs'] loss." *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.*, 2000 U.S. Dist. LEXIS 22349, at *12 (S.D. Fla. July 19, 2000). "Plaintiffs have failed to allege with specificity that Defendants' fraud, as opposed to general market conditions, caused the stock price to decline. Thus, they have not sufficiently alleged causation." *Answerthink*, 299 F. Supp. 2d at 1339. The complaint alleges Roadhouse Grill's common stock traded at: $6.875 per share, its highest level on July 6, 1999; $1.19 per share on August 1, 2001, when the NASDAQ suspended trading; and $0.59 per share, when trading resumed on September 10, 2001. (Compl. ¶¶ 7, 34). Prior to Roadhouse Grill disclosing it would restate earnings, its stock had already decreased from $6.875 to $1.19. Thus, Plaintiffs' allegations alone are insufficient to allege causation. Accordingly, Plaintiffs' Section 10(b) and Rule 10b-5 claims are dismissed against Defendants, Tan and Sabi, for failure to plead adequately scienter and proximate cause.

Since the Court is dismissing the Section 10(b) and 10b-5 claims against Defendants, the Court also dismisses the § 20(a) claim (Count II). *Malin v. IVAX Corp.*, 17 F. Supp. 2d 1345, 1351 ("Of course, without a primary violation of the securities laws, there can be no secondary violation under § 20(a).") (citation omitted).

Finally, this Court previously afforded Plaintiffs the opportunity to amend their complaint, and Plaintiffs have not sought leave to amend corresponding with the instant motion

to dismiss. *Wagner v. Daewoo Heavy Indus. America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). Therefore, the claims against Tan and Sabi are dismissed with prejudice. It is therefore:

**ORDERED AND ADJUDGED** that

1. Defendants' Motion to Dismiss Second Amended Complaint **(D.E. No. 56)** is GRANTED. The Second Amended Complaint is DISMISSED with prejudice against Defendants, Tan and Sabi.

2. As the case is stayed against Defendant, Roadhouse Grill, the Clerk of the Court is DIRECTED to mark this case CLOSED and DENY all pending motions as moot for statistical purposes only. **The Court shall retain jurisdiction and the case shall be restored to the active docket upon motion of a party if circumstances change so that this action may proceed to final disposition.** However, if Plaintiffs determine they will not continue this action against Roadhouse Grill, Plaintiffs may file the necessary documents to conclude this action against Roadhouse Grill. This administrative order shall not prejudice the rights of the parties to this litigation.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ day of March, 2004.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Klein
All Counsel of Record